**DAVID MANUFACTURING COMPANY, a corporation, and Hy-Cross Hatchery, Inc., a corporation, Plaintiffs,**

v.

**SPECIALIZED PRODUCTS, INC., a corporation, and Baughman-Oster, Inc., a corporation, and Circle Steel Corporation, a corporation, and Sukup Manufacturing Company, a corporation, Defendants.**

Civ. A. No. 3823.

United States District Court,
S. D. Illinois, S. D.

April 15, 1970.

Amended Judgment Dec. 3, 1970.

Merchant & Gould, Minneapolis, Minn., Giffin, Winning, Lindner & Cohen, Springfield, Ill., for plaintiffs.

Miley & Meyer, Taylorville, Ill., Henderson & Strom, Robert J. Schwindaman, Des Moines, Iowa, Theodore W. Anderson, Pendleton, Neuman, Williams & Anderson, Chicago, Ill. (on appeal only), for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

POOS, Chief Judge.

1. Plaintiff David Manufacturing Company is an Iowa corporation having a regular and established place of business at Mason City, Iowa.

2. Plaintiff Hy-Cross Hatchery, Inc. is an Iowa corporation having a regular and established place of business at Mason City, Iowa.

3. Defendant Specialized Products, Inc. is an Illinois corporation having its principal place of business at Taylorville, Illinois.

4. Defendant Baughman-Oster, Inc. is a corporation having a regular and established place of business at Taylorville, Illinois.

5. Defendant Circle Steel Corporation is a corporation having a regular and established place of business at Taylorville, Illinois.

6. Defendant Sukup Manufacturing Company is an Iowa corporation having a regular and established place of business at Sheffield, Iowa.

7. This is an action arising under the patent laws of the United States alleging infringement by each of the defendants of United States Letters Patent No. 3,156,541.

8. The Court has jurisdiction of the parties and the subject matter of this lawsuit.

9. On November 10, 1964, United States Letters Patent No. 3,156,541 was duly and legally issued to Mr. Henry A. Kalke for APPARATUS FOR STIRRING GRAIN AND SIMILAR PARTICULATE MATERIAL.

10. Plaintiff Hy-Cross Hatchery, Inc. is the assignee of the entire right, title and interest in and to United States Letters Patent No. 3,156,541 by virtue of an agreement between Henry A. Kalke and Hy-Cross Hatchery, Inc. dated January 30, 1962.

11. Plaintiff David Manufacturing Company is the exclusive licensee under United States Letters Patent No. 3,156,-541.

12. Plaintiffs have asserted infringement only of claims 3 and 4 of said United States Letters Patent No. 3,156,541 and the remaining claims thereof are not in issue.

13. Defendant Sukup Manufacturing Company, after November 10, 1964 and before the commencement of this action, has manufactured and sold grain stirring devices under the name STIR–WAY for use in grain drying bins. The structure of the STIR–WAY device is shown in Exhibits 43–48; it is substantially that shown in the Sukup patent Ex. 23. The manufacture or sale of this structure for use in grain drying bins and the use of this structure in grain drying bins infringe each of claims 3 and 4 of United States Patent No. 3,156,541. An example model of the STIR–WAY machine was in court as Ex. O, and a photograph of said model is Ex. LLL.

14. Defendant Specialized Products, Inc. has manufactured and sold two models of grain stirring devices under the name STIR–ALL for use in grain drying bins. For purposes of this lawsuit, the structure of the first model STIR–ALL device is the same as the STIR–WAY structure and as shown in Exhibits 43–48 and 23; and the structure of the second model STIR–ALL device is shown in Exhibit 49 and identified there as the "SPI Stir-All" and in Exhibits 50–52.

15. Specialized Products' first model STIR–ALL is substantially the same as the structure manufactured by Sukup Manufacturing Co. and is substantially the same as that disclosed in United States Letters Patent Sukup 3,272,480 issued September 13, 1966 entitled METHOD AND APPARATUS FOR AERATING STORED GRAIN. Specialized Products, Inc.'s second model STIR–ALL is similar to the structure shown in United States Letters Patent Sukup 3,272,480 issued September 13, 1966, entitled METHOD AND APPARATUS FOR AERATING STORED GRAIN with the exception that the drive motor for the stirring auger was transposed from outwardly of the horizontal support to more or less down and in line with the stirring auger.

16. Defendant Specialized Products, Inc. first began manufacture of its first

model STIR–ALL devices, identified in Findings 14 and 15, in 1967.

17. Manufacture or sale of the first model STIR–ALL device, identified in Findings 14 and 15, for use in grain drying bins and the use of this structure in grain drying bins infringe each of claims 3 and 4 of United States Letters Patent No. 3,156,541.

18. The manufacture or sale of the second model STIR–ALL device, identified in Findings 14 and 15, for use in grain drying bins and the use of this structure in grain drying bins infringe claim 4 of United States Letters Patent No. 3,156,541.

19. Defendant Baughman-Oster, Inc. and Circle Steel Corporation each manufacture grain drying bins and each of them have sold STIR–WAY structures, referred to in Finding 13 above, and the first and second models STIR–ALL structures referred to in Finding 14 above for use in their grain drying bins; and they have sold said STIR–WAY and STIR–ALL structures, together with and as a part of the sale of their grain drying bins. The grain drying bins of Baugham-Oster, Inc. and Circle Steel Corporation have included means for forcing drying air through the pile of grain while stirring the same with any one of the above STIR–WAY and STIR–ALL structures.

20. The invention in suit relates to apparatus for drying grain, particularly corn; and the invention broadly is the combination of a grain drying bin and a stirring structure for stirring substantially all of the grain in the bin during the drying operation.

21. Claim 3 of United States Letters Patent No. 3,156,541 provides as follows:

3. Grain storing and drying apparatus comprising a bin having a perforated bottom on which grain may be piled; means for forcing drying air through said perforated bottom and through the pile of grain; rotatable auger means; means mounting said auger means on said bin so that said auger means may extend into at least the upper portion of said pile, and for movement in an orbital path about an axis, said auger means being inclined downwardly and in the direction of its movement and substantially tangentially of said path; and means operatively connected to said auger means for rotating the latter, rotation of said auger means when the latter extends into piled grain effecting a reaction between said grain and said auger means tending to move the latter along said path.

22. Claim 4 of United States Letters Patent No. 3,156,541 provides as follows:

4. Apparatus for stirring material such as grain or the like stored in a container, said apparatus comprising supporting means; means for mounting said supporting means above the level of material to be stirred in said container for movement in an orbital path; a stirring auger; means mounting said auger on said supporting means with the auger axis extending downwardly into said container and with said auger axis being movable radially inwardly and outwardly with respect to the orbital path of movement of said supporting means, said auger being inclined to the vertical with respect to its movement in the orbital path; and driving means for simultaneously driving said supporting means unidirectionally in said orbital path, moving said auger mounting means and said auger radially serially inwardly and outwardly with respect to said orbital path, and rotating said auger.

23. Claim 4 of U.S. Patent No. 3,156,541 is directed to apparatus for stirring grain; and it is specifically found that the apparatus of claim 4, consistent with the invention of Kalke, is for use in grain drying and, more particularly, for use in combination with a grain drying bin and means for forcing drying air through the pile of grain in the bin during the stirring action. The invention of claim 4 cannot be read to include a stirring apparatus for any and all purposes; and claim 4, in light of the in-

vention of Kalke, is read and construed to include a grain drying bin and means for forcing drying air through the particles of grain while stirring the same as elements of the combination of elements.

24. Generally upon harvesting of shelled corn, the corn will have a moisture content of from 20–30%. Corn with this high moisture content cannot be stored for any appreciable length of time or the corn will begin to rot due to bacteria growth and fermentation. In order for corn to be stored for relatively long periods of time the moisture content of the corn must first be reduced to approximately 12–13%. Normally, a farmer will utilize what is known as a grain drying bin to reduce the moisture content of his corn. This drying is done on the farm in bins owned by the farmer.

25. Prior to the Kalke invention there were primarily two methods of drying grain in a grain drying bin; the first is called the batch drying, and the second called stage or layer drying.

26. In the batch drying method, a relatively small amount of corn would be placed on the perforated floor in the grain drying bin, about a one-foot depth, and then this corn would be dried quickly by a relatively high temperature air. After drying, the corn would be unloaded from the bin and a new batch of corn put in. One of the characteristics of batch drying is that it requires a considerable amount of work in loading and unloading the bin, and it also requires close supervision to be sure that the grain does not overdry because of the high temperature air being used during the drying process.

27. In the layer or stage method of grain drying, a first layer of grain would be placed on the perforated floor of the grain drying bin to a depth of approximately 3–4 feet and then dried; next, the first layer would be left in the grain drying bin and another layer would be placed on top of it; after drying of the second layer, a third layer would be added on top of the first two. One of the

characteristics of the layer method of grain drying is that it is necessary to hold the moisture content of the drying air at approximately 55% relative humidity with 70° ambient air temperature. If this is done the corn will dry to an equilibrium moisture of approximately 12% and will not dry any further.

28. A fairly accurate rule of thumb as to the effect of an increase in air temperature on the relative humidity of air is that the relative humidity will decrease by approximately 50% for every 20° rise in air temperature. In other words, if the incoming or atmospheric air is at 70° and 100% relative humidity, and this 70° air is increased by 20° to 90° air, the relative humidity of the air will decrease to approximately 50%. Therefore, in the layer or stage method of drying it is necessary to use drying air at a relatively low temperature. Consequently, one of the characteristics of layer drying is that it is very slow; and in some cases it could take several weeks to dry one bin full of grain.

29. The slow nature of the layer or stage method of grain drying created a real problem for the farmer since it tied up his grain drying equipment for a considerable period of time and it greatly slowed his ability to harvest his grain.

30. In many instances because of a necessity to harvest his corn, due to weather conditions and other factors, the farmer simply did not have time to wait for the corn to dry properly. In an effort to speed the drying process he would increase the temperature of the drying air. This would dry the grain faster but it would also cause the grain at the lower portion of the bin to overdry and dry to an equilibrium moisture content of perhaps as low as 8%. This overdried grain does not have the same market value as grain dried to approximately 12%, and hence, the overdrying produced a direct economic loss to the farmer.

31. Another characteristic of the layer method of grain drying, which created problems for the farmer, is that during

the bin loading the corn would not be uniformly distributed throughout the bin and some areas of the corn would be compacted much harder than other areas. The drying air passing through the bottom of the bin and through the corn will take the path of least resistance and flow around the compacted areas leaving this grain wet. After a day or two, this wet undried area of corn would begin to spoil because of bacteria growth and a "hot spot" would develop. In this situation the farmer would have to crawl into the bin and attempt to break these compacted areas by hand. This necessitated considerable work on the part of the farmer and also created a direct economic loss because of grain spoilage.

32. Problems in grain drying had existed for several years prior to the time Henry Kalke came into the field and made his invention.

33. Mr. Kalke's invention combines the best features of both batch drying and layer drying; that is, it allows the farmer to use high drying temperatures as he did during the batch drying operation, and it allows him to use these temperatures in a deep bed of corn or a full bin of corn similar to the layer drying method. At the same time, Mr. Kalke's invention eliminates the problems and disadvantages of the prior art layer and batch drying methods.

34. The invention in suit has virtually revolutionized in-bin grain drying and it has greatly increased drying capacities and uniformity of the drying of grain.

35. The invention in suit has eliminated the formation of "hot spots" during a grain drying operation, it has cut drying time and expense, and it is a significant economic advantage.

36. The invention of United States Letters Patent 3,156,541 has utility.

37. Defendants cited and described the following prior art patents upon which they relied:

U.S. Patent Brown 277,876

U.S. Patent Noth 380,588

U.S. Patent Prinz 649,351

U.S. Patent Greene 1,958,301

U.S. Patent Mustonen 1,981,603

U.S. Patent Allardice 2,304,772

U.S. Patent Raasch 2,707,097

U.S. Patent Hardy 3,114,622

German Patent No. 957,806.

38. Of the prior art patents identified in Finding No. 37, only three were applied specifically by Defendants at trial against the claims of the Kalke patent. These are U.S. Patent Noth 380,588; U.S. Patent Hardy 3,114,622; and German Patent No. 957,806.

39. Six of the prior art patents identified in Finding 37 were of record during the prosecution of the Kalke patent through the Patent Office, namely U.S. Patent Brown 277,876; U.S. Patent Noth 380,588; U.S. Patent Prinz 649,-351; U.S. Patent Greene 1,958,301; U.S. Patent Mustonen 1,981,603; and U.S. Patent Allardice 2,304,772.

40. United States Patent Brown 277,-876 is entitled "Apparatus for Drying Malt". This patent discloses a structure wherein a plurality of shovels or arms are spaced along horizontally extending shafts so that the arms rotate in a vertical direction to agitate the wet malt. The Brown patent does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of the bin. Brown does not disclose a stirring auger which is inclined to the vertical with respect to its movement in an orbital path. United States Patent Brown 277,876 would be impractical in a grain drying bin of the type involved in this lawsuit. The structure of the Brown patent is directed to agitation of a relatively shallow depth of malt and it could not be practically used in a deep bed drying system. Installation of the Brown structure in a drying bin of the type involved in the suit would result in destruction of much of the grain because of the rotating gears utilized by Brown.

41. U.S. Patent Prinz 649,351 is entitled "Apparatus for Drying Malt". This patent discloses a multiple floor malt drying building. Prinz further shows a machine supported on rails so that it can move back and forth over the entire length of the drying room. The machine utilizes a plurality of spaced augers equally spaced between the support rails. Prinz does not disclose a stirring auger mounted for movement in an orbital path and the patent does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of the bin. Further, Prinz does not disclose a stirring auger being inclined to the vertical with respect to its movement in an orbital path.

42. U.S. Patent Greene 1,958,301 is entitled "Apparatus for Cooling Coffee, etc.". This patent discloses and is directed to a structure for cooling coffee which has been roasted and which requires rapid cooling to prevent physical or chemical changes. For this purpose, the Greene patent discloses a plurality of paddles mounted on three equally spaced arms. The paddles are churned through the coffee during the cooling operation. The Greene patent does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of the bin. The Greene patent does not disclose a stirring auger which is inclined to the vertical with respect to its movement in an orbital path. The Greene patent is not related to or directed to grain drying.

43. U.S. Patent Mustonen 1,981,603 is entitled "Automatic Roaster Apparatus". This patent discloses apparatus for roasting of coffee in a continuous process, more particularly a structure for effecting an automatic coffee roasting operation. Mustonen is not directed to grain drying. The Mustonen reference does not disclose a stirring auger that is movable radially inwardly and out-wardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of the bin. Furthermore, Mustonen does not disclose a stirring auger which is inclined to the vertical with respect to its movement in an orbital path.

44. U.S. Patent Allardice et al. 2,-304,772 is entitled "Material Accelerator". This patent discloses an overhead crane type of structure utilized for unloading coal or other material from freight cars or hopper cars. Allardice is not directed in any way to grain drying. The Allardice patent does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger would move substantially to all portions of the bin.

45. U.S. Patent Raasch 2,707,097 is entitled "Leveling Mechanism for Malt Turning Machines". This patent is directed to a malt turning machine that is intermittently driven back and forth over the kiln floor. Specifically, the Raasch patent is directed to means for engaging piles of malt when it is dumped on the kiln floor and distributing the malt over the floor to a fairly uniform depth. The Raasch patent does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of the bin.

46. U.S. Patent Noth 380,588 is entitled "Malting Machine". This patent discloses a structure for use in converting barley to malt. The Noth patent does not teach or suggest anything about grain drying. The Noth patent specifically teaches the adding of moisture to the barley by passing moistened air through the barley. Noth teaches that when it is desired to dry the barley it should be removed from the tub and placed in a kiln for drying. U.S. Patent Noth 380,588 does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions

of a bin. Rather, Noth discloses the use of a plurality of short hollow cones having wide screwthreads projecting therefrom.

47. U.S. Patent Hardy 3,114,622 is entitled "Waste Material Converter and Method of Digesting Waste" and this patent pertains to a garbage digester. Hardy is concerned with the decomposition of garbage by the growth of bacteria in the waste material. There is nothing in the Hardy reference that in any way pertains to grain drying. Furthermore, there is nothing in the Hardy reference that would suggest to one skilled in the art that it would be advantageous to stir grain in a grain drying bin during the drying operation. The Hardy reference would indicate or teach that stirring of the grain during the grain drying would simply increase the bacterial growth, a situation that the farmer is attempting to avoid. U.S. Patent Hardy 3,114,622 does not disclose a stirring auger that is movable radially inwardly and outwardly on a rotating bridge or support means so that the stirring auger will be moved to substantially all portions of a bin. Rather, Hardy discloses the use of a plurality of augers spaced along a carriage. The teaching of the Hardy patent would direct one ordinarily skilled in the grain drying art away from the invention of Kalke rather than to the development and conception of such invention.

48. German Patent 957,806 is directed to a mixing container for mixing powdery or granular materials which are already dry. This patent is directed to a structure which will speed up the process of mixing the two materials into a homogeneous mass of material. There is nothing in the German patent which in any way teaches or suggests that it would be in the slightest way advantageous to stir grain, such as corn, during a drying operation in a grain drying bin. German Patent 957,806 does not have an auger which is freely movable to all portions of a bin. Rather, the German Patent discloses an auger having a lower end fixed in the center of a container and which is tilted in and out as the support for the upper end of the auger is rotated.

49. In order to use any of the prior art structures in a grain drying bin as taught by the invention in suit, the prior art structures would require extensive modification.

50. All of the structures disclosed in the prior art, including U.S. Patent Noth 380,588, U.S. Patent Hardy 3,114,622, and German Patent 957,806, would be impractical in a grain drying bin or in a grain drying operation as disclosed in the H. Kalke Patent 3,156,541.

51. None of the prior art patents relied upon by defendants disclose or teach a structure which anticipates the elements of claims 3 and 4 of the Kalke patent.

52. The Kalke invention, as defined in claims 3 and 4, has novelty.

53. Early in the development of the invention in suit, plaintiffs were unable to convince experts in the field that the Kalke invention was workable.

54. Butler Manufacturing Company, the largest manufacturer of grain drying apparatus, felt that the Kalke invention would be detrimental to the grain drying operation.

55. Prior to the Kalke invention, manufacturers of grain drying equipment felt that stirring during a drying operation was not practical and that it would be actually detrimental to the drying process to break up the drying front.

56. The Kalke invention was the first practical grain drying apparatus which eliminated the problems previously known in batch and layer drying devices.

57. The Kalke invention greatly increases the speed of the drying process and results in a grain of more even moisture content.

58. Prior to the development of the Kalke invention many universities as well as the U. S. Department of Agriculture, were conducting research programs directed to solving the problems that existed in grain drying. None of these research programs suggested the solution

of stirring the grain during the drying operation.

59. Subsequent to the development of the Kalke invention tests conducted by the agricultural departments of various universities have concluded that the Kalke invention is feasible and that the grain stirring structures eliminate the biggest problems involved in grain drying.

60. Defendants have admitted that the grain stirring devices have revolutionized in-bin drying and that they are a breakthrough in in-bin drying techniques.

61. The Kalke invention was not obvious to those skilled in the art at the time Mr. Kalke made his invention.

62. Defendants have failed to prove that the Kalke invention would have been obvious to one skilled in the art at the time Mr. Kalke made his invention.

63. Defendants bear the burden of proof of establishing that the patent in suit is invalid. Patents are presumptively valid. Defendants have failed to sustain their burden of proof with respect to invalidity.

64. The invention of the Kalke Patent No. 3,156,541 has utility and novelty; and the differences between the invention of Kalke and the prior art was not obvious to one of ordinary skill in the grain drying art at the time Mr. Kalke made his invention.

65. Claims 3 and 4 of United States Letters Patent No. 3,156,541 are valid.

66. The language "means mounting said auger means on said bin so that said auger means may extend into at least the upper portion of said pile, and for movement in an orbital path about an axis," as it appears in claim 3 of·United States Patent 3,156,541 covers the elements of the commercial structures identified as the circular track attached to the upper portion of the bin and running circumferentially around the inside of the bin, the bridge means mounted on the track, the bridge support means extending down from the fill hole of the bin, the auger carriage which moves radially inwardly and outwardly on the bridge, and the drive motor for rotating the bridge around the inside of the bin.

67. The language "for movement in an orbital path about an axis" as it appears in claim 3 of United States Patent No. 3,156,541, refers to the movement of the auger and includes movement in a spiral path wherein the stirring auger spirals outwardly from the center of the bin to the outer wall and then spirals inwardly from the outer wall to the center of the bin, or any other form of compound movement where the stirring auger moves around the bin and inwardly and outwardly on the bridge.

68. The language "said auger being inclined to the vertical with respect to its movement in the orbital path" as it appears in claim 4 of United States Patent 3,156,541 includes an auger which is inclined either forwardly in the direction of travel of the auger in the orbital path, or rearwardly away from the direction of path of travel of the auger in the orbital path. "Orbital path" is used in claim 4 to broadly describe the circular movement of the bridge or supporting means.

69. The language "and driving means for simultaneously driving said supporting means unidirectionally in said orbital path, moving said auger mounting means and said auger radially serially inwardly and outwardly with respect to said orbital path, and rotating said auger" as it appears in claim 4 of United States Patent 3,156,541 includes both the bridge driving motor and the stirring auger driving motor.

70. The language "said auger means being inclined downwardly and in the direction of its movement and substantially tangentially of said path" as it appears in claim 3 of United States Patent 3,156,541 refers to the stirring auger being inclined forwardly in the direction of its movement in the orbital path.

71. The Sukup Manufacturing Company STIR–WAY machine, when operated in a grain drying bin, includes a stirring auger which is inclined forward-

ly in the direction of movement in its orbital path.

72. The first model Specialized Products, Inc. STIR–ALL machine, when operated in a grain drying bin, includes a stirring auger which is inclined forwardly in the direction of its movement in an orbital path.

73. The second model Specialized Products, Inc. STIR–ALL machine, when operated in a grain drying bin, includes a stirring auger which is inclined rearwardly to its direction of travel in its orbital path.

74. The defendant Sukup Manufacturing Company STIR–WAY machines, when operated in a grain drying bin, infringe each of claims 3 and 4 of United States Letters Patent 3,156,541.

75. The defendant Specialized Products, Inc.'s first model STIR–ALL machine, when operated in a grain drying bin, infringes each of claims 3 and 4 of United States Letters Patent 3,156,541.

76. The defendant Specialized Products, Inc.'s second model STIR–ALL machine, when operated in a grain drying bin, infringes claim 4 of United States Letters Patent 3,156,541.

77. The STIR–WAY machines purchased from Sukup Manufacturing Company by defendant Baughman-Oster, Inc. and installed in grain drying bins infringe each of claims 3 and 4 of United States Letters Patent 3,156,541.

78. The first model STIR–ALL machines purchased from Specialized Products, Inc. by defendant Baughman-Oster, Inc. and installed in grain drying bins infringe each of claims 3 and 4 of United States Letters Patent 3,156,541.

79. The second model STIR–ALL machines purchased from Specialized Products, Inc. by defendant Baughman-Oster, Inc. and installed in grain drying bins infringe claim 4 of United States Letters Patent 3,156,541.

80. The STIR–WAY machines purchased from Sukup Manufacturing Company by defendant Circle Steel Corporation and installed in grain drying bins infringe each of claims 3 and 4 of United States Letters Patent 3,156,541.

81. The first model STIR–ALL machines purchased from Specialized Products, Inc. by defendant Circle Steel Corporation and installed in grain drying bins infringe each of claims 3 and 4 of United States Letters Patent 3,156,541.

82. The second model STIR–ALL machines purchased from Specialized Products, Inc. by defendant Circle Steel Corporation and installed in grain drying bins infringe claim 4 of United States Letters Patent 3,156,541.

83. Defendants' structures, when operated in a grain drying bin, accomplish the identical result by substantially the same structure, and are intended to operate in substantially the same way as the Kalke invention expressed in United States Letters Patent 3,156,541.

84. The full bridge grain stirring structure as disclosed in the drawings of United States Letters Patent 3,156,541 is operable to perform its intended function.

85. The Kalke grain stirring apparatus with a forwardly inclined auger is operable, and a unit of this type has been in operation on Mr. Kalke's farm for several years.

86. Henry Kalke is the inventor of the subject matter of each of claims 3 and 4 of United States Letters Patent 3,156,541.

87. An important aspect of the path of travel of the stirring auger of the structures in suit is that the stirring auger must get to substantially all portions of the bin to stir the grain.

88. Prior to June 14, 1964, a substantial number of grain stirring devices constructed and operating according to the disclosure of the Kalke application had been installed under license by Henry Kalke.

89. At the time of trial over $100,000 in royalties had been paid to Mr. Kalke for the assignment and license of the patent in suit.

90. The invention in suit has had a substantial impact on the grain drying industry and has been a considerable commercial success.

91. Defendants admit that the invention in suit has been commercially successful and that many, many units were sold.

92. The STIR–WAY structure as manufactured by defendant Sukup Manufacturing Company and both models of the STIR–ALL structure as manufactured by defendant Specialized Products, Inc. are not staple articles of commerce and are not suitable for any substantial noninfringing use.

93. All of the advertising of defendant Sukup Manufacturing Company with respect to its STIR–WAY structures, and all of the advertising of Specialized Products, Inc. with respect to its STIR–ALL structures, is directed to the use of these structures in a grain drying bin and to the use of these structures in an infringing manner.

94. Defendants Sukup Manufacturing Company and Specialized Products, Inc. have each induced infringement of United States Letters Patent 3,156,541.

95. Defendants Sukup Manufacturing Company and Specialized Products, Inc. have each contributed to infringement of United States Letters Patent 3,-156,541.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties hereto.

2. The invention defined by claims 3 and 4 of United States Letters Patent 3,156,541 is not anticipated by any of the prior art in suit including the prior art patents Noth 380,588; Hardy 3,114,622 and German patent 957,806.

3. Claims 3 and 4 of United States Letters Patent 3,156,541 define patentable invention.

4. The differences between the subject matter patented in United States Letters Patent 3,156,541 as to each of claims 3 and 4 and the prior art are such that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

5. United States Letters Patent 3,-156,541 as to each of claims 3 and 4 has utility, novelty, and non-obviousness; and claims 3 and 4 of United States Letters Patent 3,156,541 are each valid.

6. Defendant Sukup Manufacturing Company has induced infringement of each of claims 3 and 4 of United States Letters Patent 3,156,541 by either one of the acts of manufacturing or selling grain stirring structures of the type identified at trial as shown by Exhibits 23 and 43–48.

7. Defendant Sukup Manufacturing Company has contributed to infringement of each of claims 3 and 4 of United States Letters Patent 3,156,541 by either one of the acts of manufacturing or selling grain stirring structures of the type identified at trial as shown by Exhibits 23 and 43–48.

8. Defendant Specialized Products, Inc. has induced infringement of each of claims 3 and 4 of United States Letters Patent 3,156,541 by either one of the acts of manufacuring or selling grain stirring structures of the type identified at trial as shown by Exhibits 23 and 43–48.

9. Defendant Specialized Products, Inc. has induced infringement of claim 4 of United States Letters Patent 3,156,-541 by either one of the acts of manufacturing or selling grain stirring structures of the type identified at trial as shown in Exhibit 49 and identified there as the "SPI Stir-All" and in Exhibits 50–52.

10. Defendant Specialized Products, Inc. has contributed to infringement of each of claims 3 and 4 of United States Letters Patent 3,156,541 by either one of the acts of manufacturing or selling grain stirring structures of the type identified at trial as shown by Exhibits 23 and 43–48.

11. Defendant Specialized Products, Inc. has contributed to infringement of

claim 4 of United States Letters Patent 3,156,541 by either one of the acts of manufacturing or selling grain stirring structures of the type identified a trial as shown in Exhibit 49 and identified there as the "SPI Stir-All" and in Exhibits 50–52.

12. Defendant Baughman-Oster, Inc. has infringed United States Letters Patent 3,156,541 by selling grain stirring apparatus covered by claims 3 and 4 of said patent.

13. Defendant Circle Steel Corporation has infringed United States Letters Patent 3,156,541 by selling grain stirring apparatus covered by claims 3 and 4 of said patent.

14. Neither plaintiffs nor Mr. Kalke have committed any fraud on the Patent Office during the prosecution of the application which resulted in the Kalke patent United States Letters Patent 3,156,541.

15. Each of the defendants have infringed claim 3 or claim 4 or both of said claims of United States Patent No. 3,156,541.

16. Plaintiffs are entitled to an accounting for damages under 35 U.S.C. § 284 and for judgment of the damages so ascertained.

17. Plaintiffs are entitled to an injunction against each of the defendants and all those in privity with them enjoining further infringement of United States Patent No. 3,156,541.

18. Plaintiffs are entitled to all of their statutory costs and disbursements.

19. Defendants' counterclaim shall be dismissed with prejudice.

Judgment shall be entered accordingly. Exceptions are allowed.

## AMENDED JUDGMENT

It is ordered and adjudged that:

1. United States Letters Patent No. 3,156,541, entitled "Apparatus for Stirring Grain and Similar Particulate Material" as to each of its claims 3 and 4 is in all respects valid.

2. The Defendants and each of them have infringed claims 3 and 4 of said United States Letters Patent No. 3,156,541 either directly, by inducement, or by contributory infringement through manufacture and/or sale of the grain stirring devices of said Defendants in suit.

3. Except as they may be licensed by Plaintiffs, Defendants, including their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise, and each of them, is enjoined from:

(a) Making, using or selling grain stirring devices, of the types identified as being shown by Exhibits 23, 43–48, 50–52 and Specialized Products second model Stir-All shown in Exhibit 49 at trial, for use in grain drying bins; and

(b) Making, using or selling any grain stirring apparatus employing the invention covered by claims 3 and 4 of United States Patent No. 3,156,541 or inducing or contributing to the infringement of said claims during the life of said patent, except where the use, sale and/or manufacture of such devices is for the government of the United States of America and with the government's authorization or consent.

4. Defendants' Counterclaim for Declaratory Judgment of invalidity and non-infringement of United States Patent No. 3,156,541 is dismissed with prejudice.

5. Defendant Sukup Manufacturing Company shall pay to Plaintiffs Ninety Thousand Dollars ($90,000) as damages sustained by the Plaintiffs as a result of Defendants' infringement up to October 1, 1970.

6. Plaintiffs are entitled to judgment for all of their statutory costs and disbursements.

7. All statutory costs and disbursements are to be paid by Defendants.